UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION,<br><br>    Plaintiff,<br><br> v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES; CENTERS FOR MEDICARE & MEDICAID SERVICES,<br><br>    Defendants. | Civil Action No. 1:16-cv-03854 |

**COMPLAINT FOR INJUNCTIVE RELIEF**

**Preliminary Statement**

1. This is an action under the Freedom of Information Act ("FOIA") seeking the release of agency records relating to complaints against Catholic hospitals for denying appropriate care and information to pregnant women seeking reproductive health care, in violation of federal law. Upon information and belief, these complaints describe serious harm – including major blood loss and life-threatening infection – that women experienced after being denied appropriate care by Catholic hospitals.

2. Catholic hospitals are increasingly prevalent throughout the country. As of 2016, one in six hospital beds is in a facility that adheres to Catholic restrictions on care. These restrictions, known as the Ethical and Religious Directives for Catholic Health Care Services ("Directives"), are issued by the U.S. Conference of Catholic Bishops. They prohibit clinicians from providing reproductive health care such as sterilization and abortion, even when the woman's health or life is in danger.

3. Catholic hospitals receive billions of dollars in federal Medicare and Medicaid funding. For example, in 2016, the top four Catholic health systems alone in the U.S. received more than $90 billion in combined Medicare and Medicaid patient charges.

4. As a condition of receiving Medicare funding, hospitals with emergency rooms must comply with a federal law called the Emergency Medical Treatment and Active Labor Act ("EMTALA"). This law requires hospitals to provide patients experiencing emergency medical conditions with appropriate stabilizing care. For some women, the appropriate care required to stabilize an emergency medical condition within the meaning of EMTALA is termination of the pregnancy.

5. Furthermore, the Centers for Medicare & Medicaid Services ("CMS") have issued a federal regulation called the Conditions of Participation in Medicare and Medicaid ("COP"), which establishes the health and safety requirements that hospitals must meet to participate in the Medicare and Medicaid programs. Among other things, the COP provide that hospital patients have the right to receive information about their condition and request treatment, including reproductive health care.

6. Complaints alleging violations of EMTALA and/or the COP may come from a number of sources, including patients, physicians, other hospitals, and state agencies. CMS's regional offices screen these complaints to determine whether an investigation is warranted. An investigation includes: a review of the emergency department log and a sample of patient records, including the complaint case; interviews with hospital staff and physicians involved in the reported incident; and an exit conference.

7. On information and belief, a number of complaints have been filed with CMS regarding serious EMTALA and COP violations by Catholic hospitals that refuse to

provide appropriate treatment to women experiencing emergency pregnancy complications. For example, one woman experiencing a miscarriage was discharged to the Catholic hospital's parking lot, picked up by a relative, and driven to another facility, where she received an emergency abortion and was treated for major blood loss. Another woman miscarried by herself on the toilet, after a Catholic hospital gave her Tylenol to treat a potentially deadly pregnancy-related infection and sent her home (twice).

8. On November 5, 2014, Plaintiff American Civil Liberties Union ("ACLU") requested documents under the FOIA from Defendant CMS regarding complaints the agency has received about Catholic hospitals. The ACLU received few documents in response, and appealed to request an appropriate search. To date, the ACLU has received no response to its appeal.

9. The ACLU is legally entitled to these documents, which were requested a year and a half ago. CMS has far exceeded the statutory and regulatory time limitations to respond to the ACLU's appeal.

10. Given the seriousness of the EMTALA and COP violations at issue, it is crucial that the requested documents are disclosed so that the public can ascertain whether hospitals receiving federal funds are violating federal laws designed to protect patient health and safety. Accordingly, this Court should order Defendants to provide the requested records to the ACLU immediately.

**Jurisdiction and Venue**

11. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 5 U.S.C. §

552(a)(4)(A)(vii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706.

12. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) because Plaintiff's principal place of business is in New York.

**Parties**

13. Plaintiff American Civil Liberties Union ("ACLU") is a non-profit organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. The ACLU has filed multiple FOIA requests pertaining to the government's policies. The ACLU is a nationwide, non-profit, non-partisan organization with more than 500,000 members dedicated to the constitutional principles of liberty and equality.

14. Defendant U.S. Department of Health & Human Services ("HHS") is a Department of the Executive Branch of the United States government. HHS is an agency within the meaning of 5 U.S.C. § 552(f)(1)

15. Defendant CMS, a subdivision of HHS, is an agency within the meaning of 5 U.S.C. § 552(f)(1).

**CMS Complaints Against Catholic Hospitals for Failing to Provide Appropriate Care to Pregnant Women Suffering Miscarriages**

16. Independent of the few tangentially relevant documents produced by CMS in response to the ACLU's FOIA request, the ACLU is aware of several complaints lodged with CMS that demonstrate the serious harms imposed on pregnant women when Catholic hospitals follow the Directives and violate federal law.

17. For example, on information and belief, CMS found in a 2012 investigation that St. John Hospital in Detroit, Michigan, violated EMTALA when it denied a woman appropriate treatment for her miscarriage because of its adherence to the Directives.

18. The woman, who had arrived at St. John Hospital via ambulance, presented with vaginal bleeding and an elevated heart rate. She was diagnosed with an "inevitable abortion" due to fetal prematurity. Crying and upset, the woman told hospital staff that she "wanted to have the abortion because she knew the baby would not make it," but staff members refused to perform the procedure as long as there were fetal heart tones. After about six hours at the hospital, the woman was discharged with no real plan confirmed about where she would go for the emergency abortion or how she would arrive there safely. She was picked up by a family member and driven to another facility, where she received an emergency abortion and seven pints of blood.

19. During the investigation into the incident, a St. John Hospital staff member told CMS: "We are a Catholic institution and we do not perform abortions here if there are fetal heart tones."

20. CMS found that St. John Hospital had violated an EMTALA regulation requiring hospitals that receive Medicare funds to stabilize and appropriately transfer patients with emergency medical conditions.

21. Moreover, Faith Groesbeck – a former county health official in Michigan – filed a CMS complaint alleging that Mercy Health Partners, a Catholic hospital, violated EMTALA by refusing to provide medically indicated treatment and information to five women undergoing dangerous miscarriages between August 2009 and December 2010. *See* Molly Redden, "Abortion Ban Linked to Dangerous Miscarriages at Catholic

Hospital, Report Claims," *The Guardian* (Feb. 18, 2016), *available at* http://www.theguardian.com/us-news/2016/feb/18/michigan-catholic-hospital-women-miscarriage-abortion-mercy-health-partners.

22. On information and belief, the complaint and the women's medical records indicated that all five women were experiencing pregnancy complications and showed signs of infection. None of their pregnancies were viable, and the women's symptoms indicated that it would be safest for them to terminate their pregnancies immediately. But hospital staff at Mercy Health Partners neither informed them about the possibility of immediate termination nor provided the appropriate care. "As a result . . . several of the women suffered infection or emotional trauma, or had to undergo unnecessary surgery." *Id.*

23. "One of the women described in the complaint was given Tylenol for a potentially deadly infection and sent home – twice – where she miscarried by herself on the toilet." *Id.* Another woman was forced to wait over eighteen hours to complete a miscarriage without medical intervention, resulting in the retention of an infected placenta, which had to be removed through an additional surgical procedure.

**The FOIA Request and CMS's Response**

24. On November 5, 2014, the ACLU filed a FOIA request with Defendant CMS seeking release of all records within the last five years: (1) relating to allegations of improper care, violations of EMTALA, and violations of CMS regulations related to pregnancy-related treatment – including treatment for miscarriage, abortion, and sterilization – at hospitals receiving federal funds; and (2) memorializing rules,

guidelines, policies, standards of care, etc. for treatment of pregnancy-related conditions at hospitals receiving federal funds. *See* Ex. A.

25. On September 10, 2015, the ACLU received CMS's response to the request. In total, CMS produced 150 pages of records concerning consent to sterilization, 139 pages of which were produced. *See* Ex. B.

26. Neither the results of CMS's investigation into St. John Hospital nor Ms. Groesbeck's CMS complaint were included in CMS's response. In fact, notwithstanding the ACLU's specific requests, CMS's response included no documents whatsoever related to complaints about treatment for miscarriage or abortion.

27. On October 8, 2015, the ACLU appealed CMS's response to its FOIA request. *See* Ex. C. In its administrative appeal, the ACLU expressly challenged the adequacy of CMS's search.

28. To date, the ACLU has received no response to its appeal.

29. CMS has failed to comply with the time limits imposed by the FOIA statute and the applicable HHS regulations.

30. On information and belief, CMS has not conducted an adequate search for records responsive to the ACLU's FOIA request.

31. Under the FOIA statute, an agency must determine an appeal within 20 days (excluding weekends and legal holidays) after receiving it. 5 U.S.C. § 522 (a)(6)(A)(ii).

32. Under HHS regulations, CMS must decide an appeal within 20 working days after the appeal reaches the appropriate review official. 45 C.F.R. § 5.35(b)(2).

33. If CMS fails to "meet the deadline[], [the requester] may proceed as if [it] had denied . . . [the] appeal." *Id*. § 5.35(a).

34. The ACLU therefore has instituted this action to ask the Court to order CMS to disclose the requested documents.

**The ACLU's Entitlement to a Waiver of or Reduced Processing Fees**

35. The ACLU also asked for a waiver or reduction of document search, review, and duplication fees because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 45 C.F.R. § 5.45(a).

36. The records sought in the instant request will significantly contribute to the public understanding of the operations and activities of HHS, as well as the treatment of pregnancy-related conditions at hospitals receiving federal funds. In addition, disclosure is not in the ACLU's commercial interest. The ACLU will evaluate the disclosed documents and, depending on what is contained in the documents, may well disseminate the information to the public. If the ACLU publicly discloses information obtained through the FOIA, it will do so at no cost to the public.

37. The ACLU is also entitled to a waiver or reduction of fees because it qualifies as a "representative of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); 45 C.F.R. § 5.45(b)(3).

38. The ACLU is a representative of the news media for the purposes of FOIA because it is an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience.

39. The ACLU does not seek the requested information for commercial reasons. The ACLU summarizes, explains, and disseminates the information it gathers through FOIA requests at no cost to the public.

## Causes of Action

40. The ACLU repeats and realleges paragraphs 1-39.

41. Defendants' failure to timely respond to the ACLU's appeal violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(ii), and HHS's corresponding regulation, 45 C.F.R. § 5.35(b)(2).

42. Defendants' failure to make a reasonable effort to search for records responsive to the ACLU's request violates the FOIA, 5 U.S.C. § 552(a)(3)(C), and HHS's corresponding regulation, 45 C.F.R. § 5.24.

43. Defendants' wrongful withholding of non-exempt responsive materials violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and HHS's corresponding regulation, 45 C.F.R. § 5.2.

## Requested Relief

WHEREFORE, Plaintiff prays that this Court:

1. Order Defendants to immediately process all requested records;
2. Order Defendants to conduct a thorough search for all responsive records;
3. Order Defendants to promptly disclose the requested records in their entirety and make copies available to Plaintiff;
4. Enjoin Defendants from charging Plaintiff fees for the processing of their request;
5. Award Plaintiff its costs and reasonable attorneys' fees incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

6. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

_____
Brigitte Amiri (BA-8497)
Brian Hauss*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Phone: 212-549-2633
Fax: 212-549-2652

*Application for admission forthcoming